IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE | )( | Civil Action No. 2:17-cv-745 |
| Plaintiff, | )( | |
| | )( | |
| vs. | )( | Hon. Rodney Gilstrap |
| | )( | |
| MOCKINGBIRD PUBLISHING CO. | )( | Plaintiff's Motion to Amend and |
| and GERARD BELLO II | )( | Remand and Memorandum in Support |
| Defendants. | )( | |

## MOTION TO AMEND AND REMAND

COMES NOW Plaintiff, Jason Lee Van Dyke, and files this motion to amend complaint and remand under Rule 15(a)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1447(c).  Specifically, Plaintiff prays that this Honorable Court (1) permit Plaintiff to amend its complaint to clarify that he only seeks nominal damages plus general damages for injury to his personal and professional reputation in the maximum amount of $60,000.00; and (2) remand this case to the Denton County Court at Law No. 2, where it was originally filed.  Plaintiff's Second Amended Complaint is filed contemporaneously.[1]

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
Tex. Bar No. 24057426
108 Durango Drive
Crossroads, TX 76227
P – (469) 964-5346
F – (972) 421-1830
Email:  jason@vandykelawfirm.com

---

[1] Since this Second Amended Complaint is being filed in federal court, Plaintiff has utilized the federal court's case caption for its Second Amended Complaint, even though the amendments amend a state court complaint.

## **CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the above and foregoing document on counsel for all parties on this 21st day of November, 2017, at the address below using the method listed below:

        Randall Kallinen                via electronic mail/facsimile
        511 Broadway St.
        Houston, TX 77012

                        /s/ Jason Lee Van Dyke
                        JASON L. VAN DYKE

## MEMORANDUM IN SUPPORT

### I. FACTS

1.  Plaintiff is Jason Lee Van Dyke. Defendants are Mockingbird Publishing Co. and Gerard Bello II. On September 15, 2017, Plaintiff sued Defendants for libel in the Denton County Court at Law No. 2. Mockingbird Publishing Co. was served with notice of suit on or around October 18, 2017. Gerard Bello II has not yet been served with notice of suit. Defendants filed their notice of removal on November 16, 2017.

2.  Plaintiff's complaint contains a single count of libel per se. Plaintiff seeks recovery from Defendants of nominal damages plus damages for injury to his personal and professional reputation in the amount of $60,000.00. The basis for Plaintiff's complaint is an open letter published by Defendants on the Internet and distributed on social media where Defendant made the following false and defamatory statements concerning Plaintiff: (a) Plaintiff is a white nationalist, a nazi, and/or a neo-nazi; (b) Plaintiff was convicted of weapons charges and domestic violence; (c) Plaintiff is prohibited under federal law from possessing firearms and is currently in violation of federal law for possessing firearms; and (d) Plaintiff has committed professional misconduct through the unauthorized practice of law or through unlawful "forum shopping". It should be noted that Defendants have continued to make similar false and defamatory statements concerning Plaintiff during the pendency of this lawsuit as part of a fundraising campaign to pay their legal fees.

### II. ISSUES

3.  The first issue is whether Plaintiff may be permitted leave to amend his complaint to clarify that the maximum amount in controversy is less than $75,000.00. The second

issue is whether this matter should be remanded to the Denton County Court at Law No. 2.  These two issues will be considered in sequence.

## III.   ARGUMENT

### A.   Motion to Amend

#### i.   Plaintiff Is Entitled to Amend as a Matter Of Course

4.   Plaintiff alleges that it is entitled to amend its complaint as a matter of law pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

5.   Plaintiff First Amended Complaint is a pleading to which a responsive pleading is required.  *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002).  Plaintiff was served with Defendants' Original Answer on November 13, 2017.  Plaintiff's Second Amended Complaint was filed within 21 days after service of the responsive pleading, and therefore, it should be permitted as a matter of course.

6.   Rule 15(a)(1) permits a party to amend its pleading *once* as a matter of course.  Although this is Plaintiff's second amended pleading, it is also the first time Plaintiff has amended while in federal court.  It should further be noted that Plaintiff First Amended Complaint was filed in state court only to permit service on one of the parties by and through the Texas Secretary of State.

7.   Even if this Court finds that Plaintiff was not entitled to additional amendments as a matter of course after the filing of its first amended complaint, this Court should still permit Plaintiff to amend its complaint under Rule 15(a)(2).

#### ii.   Standards for Amendments Under Rule 15(a)(2)

8.   Rule 15(a)(2) of the Federal Rules of Civil Procedure permits a party to amend its pleading only with the opposing party's written consent or the court's leave.  It further

specifies that "the court should freely give leave when justice so requires."  In

determining whether "justice so requires," a court may balance harm to the moving

party if he or she is not permitted to amend against prejudice caused to the other party

if leave to amend is granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### iii.   Defendant Will Not Be Prejudiced by an Amended Pleading

9.    In determining whether to grant leave for a plaintiff to amend his complaint, "[t]he

most important determining factor is whether . . . the opposing party will be prejudiced

if the movant is permitted to alter his pleadings."  *State of Tenn. Ex. Rel. Pierotti v. 777*

*N. White Station Road*, 937 F. Supp 1296 (W.D. Tenn 1996).  Defendants have only

engaged in two activities in response to Plaintiff's First Amended Complaint: (1) the

filing of a responsive pleading; and (2) the removal.  Neither of these very limited

activities warrants a finding that Defendants will be prejudiced as no significant

litigation has taken place in this court:  no pre-trials have taken place, no Rule 26

conference has been conducted, an no other motions have been filed.  Consequently,

Defendants cannot seriously argue that they would be prejudiced if this Court were to

grant Plaintiff leave to amend its Complaint so as to clarify that it seeks damages in the

maximum amount of $60,000.00.

10.   Removal to this Court by Defendants was nothing more than a tactical venture in forum

shopping and their arguments in support of removal are dubious at best.  They have

artfully argued that Plaintiff's First Amended Petition seeks affirmative relief in an

amount exceeding $75,000.00 based in part upon portions of the petition specifically

required to be plead by the Texas Rules of Civil Procedure rather than what Plaintiff is

actually seeking in damages.  Specifically: (a) [a]n original pleading which sets forth a

claim for relief . . . shall contain a statement that the damages sought are within the jurisdictional limits of the court.  Tex. R. Civ. P. 47(b).  Rule 47 goes on to state that, except in suits governed by the Family Code, "a statement that the party seeks: (1) only monetary relief of $100,000.00 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; or (2) monetary relief of $100,000 or less and non-monetary relief; or (3) monetary relief over $100,000 but not more than $200,000; or (4) monetary relief over $200,000 but not more than $1,000,000; or (5) monetary relief over $1,000,000."

11.   In the only other portion of the pleading pertaining to damages, Plaintiff pleads nominal damages and damages in the amount of at least $60,000.00.  Although Plaintiff could have, in theory, plead an amount in excess of $60,000.00, it elected not to do so and specifically plead for an award of $60,000.00.  Other federal courts have observed that the sum claimed by the plaintiff controls to determine whether the controversy exceeds $75,000.00.  See e.g. *Everett v. Verizon Wireless*, 460 F.3d 818, 822 (6th Cir. 2006); *Gafford v. Gen. Elec. Co*., 997 F.2d 150, 155 (6th Cir. 1993).  In short, Defendants are relying solely on the words "at least" to justify removal of this case to federal court.  Plaintiff's Second Amendment Complaint has simply re-plead a state court claim in a manner consistent with the federal rules of civil procedure and clarified that Plaintiff seeks no more than $60,000.00 in general damages for injury to his personal and professional reputation.  If anything, this amendment would benefit Defendants by capping the general damages that Plaintiff may recover in this case.

### iv.   Destruction of Diversity Jurisdiction is Insufficient to Deny Leave to Amend

12.   With consideration to the pleading requirements of county and districts courts

referenced in paragraph six above, there is little doubt that the amendment to Plaintiff's

complaint may result in a federal court finding itself devoid of jurisdiction.  It is

nevertheless appropriate to permit such amendment, and in fact, federal courts have

expressly permitted such amendments in the past.

13.    In *Kinsey v. Snap-On Tools*, the plaintiff brought state and federal claims in state court.

752 F. Supp. 693 (W.D.N.C. 1990).  Three weeks after removal, the plaintiff sought to

amend its complaint under Rule 15(a) to eliminate the RICO claims.  *Id*.  The defendant

argued that the plaintiff should not be permitted to amend his complaint where the

effect is to avoid federal jurisdiction.  *Id*.  The *Kinsey* court held as follows:

> "Plaintiffs state that they no longer wish to pursue federal RICO claims.  The
> Court can envision a host of reasons for such a decision including the expense
> and complexity of pursuing RICO claims.  While Plaintiffs may be attempting
> to avoid federal jurisdiction by amending the complaint . . . such a reason does
> not diminish the right of these plaintiffs to set the tone of their case by alleging
> what they choose."  Id., (quoting McGann v. Mungo, F. Supp. 1413, 1415
> (D.S.C. 1982).

14.    In this case, Plaintiff is not even seeking to remove a federal cause of action for the

purpose of defeating the jurisdiction of this Court.  Rather, Plaintiff seeks to clarify that

the general damages he seeks for injury to his personal and professional reputation do

not exceed $60,000.00.  While Plaintiff believes that this fact was abundantly clear in

his First Amended Complaint, it is willing to clarify this fact.

15.    Courts have been slightly more demanding with respect to amendments that destroy a

court's diversity jurisdiction through joinder of a non-diverse party.  See e.g. *Moore v.*

*Manns*, 732 F.3d 454, 456 (5th Cir. 2013); *Bailey v. Bayer CropScience L.P.,* 563 F.3d

302, 309 (8th Cir. 2009).  Again, Plaintiff is not asking the Court to add a non-diverse

party to this case.  This is merely an amendment that seeks to clarify that which

Plaintiff believed was abundantly clear in a prior pleading.

16. Notwithstanding long standing precedent permitting a Plaintiff to remain the master of his claim, the Court may have reservations that an amendment which almost guarantees remand amounts to a type of gamesmanship or forum-shopping.  Any such reservations should not influence this case.  A full consideration of the matter demonstrates that it was nothing more than Defendants' gamesmanship and forum shopping that brought this case to federal court in the first instance.  This is demonstrated by Defendants' relatively weak arguments suggesting that Plaintiff seeks $75,000.00 or more combined with the fact that Plaintiff's suit is based only on state law claims.  Given these circumstances, as well as commentary made by both Defendants and their counsel to media, removal of this case was likely engineered to (1) hinder and delay proceedings that have already drawn significant media scrutiny; (2) avoid the hearing of this matter by the duly-elected judiciary of Denton County; or (3) some other purely tactical purpose.  Consequently, Plaintiff should be permitted leave to amend his Complaint so as to clarify that he seeks no more than nominal damages plus $60,000.00 in general damages.

## B.    Motion to Remand

### i.    Standard of Review for a Motion to Remand

17. This Court must strictly construe the removal statutes in favor of remand and against removal.  Bosky v. Kroger Tex., LP, 288 F.3d 208, 211 (5th Cir. 2002).  It must remand this lawsuit back to the Denton County Court of Law No. 2 is it lacks subject matter jurisdiction.  28 U.S.C § 1447(c).

18. *Regardless* of whether this Court permits Plaintiff to amend his Complaint, this case

should be remanded to Denton County Court at Law No. 2.  Pursuant to 28 U.S.C. §

1447(c), a motion to remand is the proper vehicle for challenging a defendant's notice

of removal.  A motion to remand also appears to be the mechanism by which a plaintiff

urges a federal court.  Hurley v. Motor Coach Indus., 222 F.3d 377, 380 (7th Cir.

2000).

### ii.     This Court Lacks Diversity Jurisdiction Due To The Amount in Controversy

19.   This Court should remand this case to state court because, regardless of whether

      Plaintiff is ultimately permitted to amend his complaint, the amount in controversy

      clearly does not exceed $75,000.00, excluding interest and costs.  28 U.S.C. § 1332(a);

      The amount in controversy is nominal damages and general damages in the amount of

      only $60,000.00 excluding interest and costs.

20.   Defendants' basis for removal of this case is substantially addressed previously in this

      motion.  Specifically, they have utilized language in Plaintiff's pleading that is

      specifically required by Rule 47 of the Texas Rules of Civil Procedure as a means

      through which to invoke this Court's jurisdiction.  See *supra ¶ 10*.  Neither a statement

      that a Plaintiff seeks damages within the jurisdictional limits of a particular court, nor a

      general statement concerning the damages sought in a case should be interpreted under

      these circumstances as a plea for damages of $75,000.00 or more.  The language of "at

      least $60,000.00" as opposed to "not greater than $60,000.00" is similarly addressed

      herein.  See *supra* ¶ 11.

21.   This Court should not permit Defendants to rely on boilerplate language, required in

      Plaintiff's petition by Tex. R. Civ. P. 47, as being sufficient to establish diversity

      jurisdiction under 28 U.S.C. § 1332(a).  The consequences of such a finding would

amount to a finding that the Texas Rules of Civil Procedure themselves are intended to permit removal to federal any case involving diversity of citizenship that is filed in the district or county courts of Texas.  Furthermore, this Court should respect the well-established precedent of examining the complaint at the time it was filed for the purpose of determining whether diversity jurisdiction exists.

### iii.     $60,000.00 is a Reasonable Assessment of Plaintiff's Damages from this Defendant

22.     In its first amended complaint, Plaintiff requested nominal damages.  Nominal damages are damages awarded when there has been a violation of legal right, but the injured party has not sustained any actual loss or cannot prove the amount of the loss.  See *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013); *MBM Fin. Corp. v. Woodlands Oper. Co.*, 292 S.W.3d 660, 665 (Tex. 2009).  Nominal damages are damages in name only and are awarded in a trivial amount – often only one dollar.  *Hancock*, 400 S.W.3d at 65.  A plaintiff who successfully pleads a cause of action for defamation is entitled, at the very least, to nominal damages.  *Id*.

23.     General damages are recoverable in a cause of action for libel.  *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 94 (Tex. App. – Corpus Christi 1992, writ dism'd).  These are non-economic damages that do not require a plaintiff to prove that it suffered a pecuniary loss.  *Hancock*, 400 S.W.3d at 65-66.  In this case, Plaintiff seeks general damages as compensation primarily for injury to his character or reputation only.  As this is case is for libel *per se*, Plaintiff is presumed to be entitled to general damages, but the law does not presume any particular of damages beyond nominal damages.  *Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012); see e.g. *Waste Mgmt. v. Texas Disposal Sys. Landfill, Inc.,* 434 S.W.3d 142, 159-60 (Tex. 2014).

24.   The subject-matter of this litigation is a very small publication that is local to the
      Columbus, Ohio area.  Plaintiff is licensed to practice law in the U.S. District Court in
      and for the Northern District of Ohio, but does not live in Ohio and does not routinely
      practice law in Ohio.  In fact, Plaintiff would have been ignorant as to the publication
      of the false and defamatory statements if Defendants had not published them on the
      Internet-based article and sent that article to the public at large through Twitter.

25.   The false and defamatory publications concerning Plaintiff remain available online.
      The mere existence of this publication is damaging to Plaintiff's personal and
      professional reputation.  However, when considering both the locality of the
      publication and the size of the publisher, it's almost completely unforeseeable that
      Plaintiff will recover more than $75,000.00 for Defendants.

   **iv.   The Newspaper Articles Cited by Defendants are Gross Exaggerations
            of the Potential for Damages in this Case.**

26.   Defendants have cited several cases as evidence that a judgment in this case could
      exceed $75,000.00.  One of them is 1991 article concerning a libel judgment against a
      broadcasting company and television news reporter who was the subject of an eleven-
      part television series.  The article states that, of the $58 million awarded in that case
      against a major broadcast network, a total of $40 million were punitive damages.
      Plaintiff has not plead punitive damages in this case and does not seek such damages.
      Furthermore, this case is easily distinguishable from the WFAA case:  that case, which
      pre-dated the Internet, involved an eleven-part television series by a major network that
      was broadcast almost exclusively in the area where the plaintiff practiced.  This case
      involves a single article that would not have been known to anyone in the area where
      Plaintiff practices law but for Defendants' decision to broadcast it on Twitter and the

world wide web.

27. The second case furnished to this Court as an example is also remarkably distinguishable from this case: it involves anonymous commentators posting that the plaintiffs were molesters and sexual deviants.  The damages in that case were extensive: the subjects of the article were indicted for a felony, tried, and acquitted. The plaintiffs were forced to move out of town and one of the plaintiffs lost her business.  This case does not involve damages that even remotely resemble those that were awarded in the Lesher case, and it remains unclear how much of the award in the Lesher case was for damages that have neither been plead nor sought in this case.

28. The third article furnished to this Court simply referenced a Henderson County judgment for $500,000.00 in 2006.  Once again, it remains unclear from the article what types of damages were sought and what portion of them were of a nature that would be inapplicable to this case.

## IV.   CONCLUSION

29. Plaintiff should be permitted to amend its complaint as a matter of course under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.  Even if this rule does not apply, Plaintiff should still be permitted leave to amend under Rule 15(a)(2).  Regardless of whether Plaintiff's Second Amended Complaint is accepted by this Court, Defendant cannot rely on language expressly required under the rules of pleading in Texas courts for the purpose of establishing diversity jurisdiction in this Court.  It should also appear to this Court to a legal degree of certainty that Plaintiff in good faith will not recover $75,000.00 or more in this case.  Accordingly this Court lacks subject mater jurisdiction over the lawsuit and this case should be remanded.

## V.   PRAYER

30.   Plaintiff prays that this Honorable Court grant this motion and remand this suit to the

Denton County Court at Law No. 2.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
Tex. Bar No. 24057426
108 Durango Drive
Crossroads, TX 76227
P – (469) 964-5346
F – (972) 421-1830
Email:  jason@vandykelawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the above and foregoing document on counsel for all parties on this 21st day of November, 2017, at the address below using the method listed below:

Randall Kallinen          via electronic mail/facsimile
511 Broadway St.
Houston, TX 77012

/s/ Jason Lee Van Dyke
JASON L. VAN DYKE